Case number 22-1280, United States of America v. T'Shaun Omar Jones, Oral Argument Not to Exceed, 15 minutes per side. Amanda Bashy for the appellant, you may proceed. Good morning. Good morning. May it please the court, my name is Amanda Bashy. I'm here on behalf of the appellant T'Shaun Jones, and I'd like to reserve 3 minutes for rebuttal. Very well. The government bore the burden at T'Shaun Jones' sentencing of proving the guideline enhancements applied beyond a preponderance, I'm sorry, by a preponderance of the evidence. In response to Jones' objections, the government offered little to nothing to meet that burden in the district court. It now asks for a free pass here to meet its burden on appeal despite that waiver below. This court's precedent does not support... What is the relief that you're asking for? Mr. Jones is asking for his sentence to be reversed. But he agreed to a plea agreement, like a C1C plea agreement, right? So he agreed to 10 years, so he wants to get out of the plea agreement now? I mean, it's...did he...do you want to withdraw the plea? Mr. Jones would like the district court to first correctly calculate the guidelines that applied in his case. The district court tethered the analysis of the reasonableness of the plea agreement to the particular guidelines calculated by probation, and those guidelines were significantly higher than what Mr. Jones argued they were. Right, but that's what I don't get about this case. He thought he should get...he thought the proper calculation was five years, let's say. He agreed, nevertheless, to take 10 years and in the C1C agreement. So what would change? I just...I don't understand what would change here. He would go back, he would still agree to the 10 years, and but you would argue to the court that the guideline range is different, with the result being what? Well, the 10-year negotiation was based on the party's presumption that he qualified for a 15-year mandatory sentence under the Armed Career Criminal Act. That presumption now, given developments in the case law, may not be...there may not be a 15-year mandatory minimum that the Type C plea agreement and the reasonableness of that agreement, that 15-year sentence loomed large. Doesn't that always hold true where there is a negotiated plea? That it...that everybody knows, yeah, something might change in the meantime, but this is where we are today and I think it's a good deal, which Mr. Jones apparently said, yep, I'll take it. I think if we look to...I'm sure he wasn't thrilled about it, but he did, right? He did accept, yes, he did sign the plea. Yes. I think if we look to the Supreme Court's guidance in Hughes, where it discusses the importance of a correct guideline determination in the reasonableness of... As a threshold, yes. Yes, as a threshold, even in the context of a Type C plea agreement where the parties have reached a mutual decision on the question of what an appropriate sentence is, the district court still has a duty to evaluate that sentence in light of the correct guideline range and also can reject the plea agreement because it's not reasonable. And so that's something that Mr. Jones could ask for in the district court if this court were to remand. Similar to Judge Griffin's question, I mean, or Judge Nalbandian asked you, procedurally, where are we now? You know, those seem to be worthwhile arguments, but what was filed here procedurally, what's pending before this bench? You'd like to go...you want to remand? Yes. Okay, what is your grounds for getting one? Your best grounds for getting a remand? The change in the law, is that it? The best grounds for getting a remand or that... Achieving that from this court because we can't fix your sentence, right? Correct, were that the guidelines were incorrectly calculated. Okay. And that the government didn't meet its burden, didn't even really try to meet its burden in the district court on these particular guideline enhancements. But then the bottom line is you, on remand, you would not want the district court to accept the plea agreement? Is that...the practicality is what? You want to get out of the plea agreement? I think both parties would potentially have the right in the district court to get out of the plea agreement. The district court itself would be able to reject the plea agreement. I know, but if then we remand it, is it a futile exercise? I mean, we, okay, we agree with you that the guidelines were miscalculated, so we'll remand it. Then you go back to enforce our plea agreement. What have we accomplished? I mean, it's been, it's a futile exercise, isn't it? I think that this court's case, the Rosales case, discusses that it's important for the guidelines to be appropriately calculated and to give the district court that opportunity to tether the agreed-upon sentence to the correct guideline range, even if it seems likely. I think that's what the words of the Rosales court use. Even if it seems like the court is going to go ahead and impose the same sentence, it's necessary from a procedural reasonableness perspective to give the district court that opportunity, particularly where the district court was equivocal on the record, and that's what we have here. The record here shows that the district court specifically tethered the probation-calculated guidelines when deciding whether the sentence was reasonable. I hear the district court at the guideline scoring didn't make any difference because there was a plea agreement and the sentence seemed reasonable. Then at the end, the district court made kind of an ambiguous statement, but if things change, come on back and I'll take another look at it, which did create kind of an ambiguity, I think. Yes, I think there's ambiguity, exactly, in that statement and also in the statement where the district court imposes the sentence and specifically references. Okay, well, assuming it makes a difference here, let's talk about your claims of error as to the enhancements. You've got the one about the recklessness in danger, creating a substantial likelihood of bodily injury or harm regarding fleeing of the police officer. You've got the recklessness enhancement. Then you've got the other enhancement as to the why you think those are reversible errors. Thank you. I'll first address what a controlled substance offense is under the guidelines. Mr. Jones argued below, as he does in this appeal, that in applying the categorical approach, the Michigan drug schedules sweep more broadly than the federal drug schedules when it comes to cocaine and heroin. Specifically, he argued that Michigan law covers isomers of heroin and cocaine that the federal drug schedules do not cover. So those offenses categorically could not qualify as controlled substance offenses to enhance his guideline range. I think importantly, the government had the burden of showing that this enhancement applied in the district court. But isn't it just, there's two aspects to this argument, it seems to me. One is kind of the legal aspect, whether we can look at state law. The other one is kind of the science aspect, right? Is it actually broader or not broader? I take it on the second one, it's dependent on evidence, expert testimony, things about essentially organic chemistry that I probably don't know. But it seems like the record is simply decide, it's just a matter of interpreting the guideline, right? Is the state definition of controlled substance something that we can look at? Right? That's correct, and actually it's something this court has looked at already. Well, we've looked at it in some unpublished cases, but I don't think we have a published case directly on point, right? I think we have published cases that are quite close to on point, but you're correct. There's no controlling case. I think the two cases that come to mind most importantly are Jackson and Clark. In Jackson, the court was unequivocal that when determining the definition of a guidelines term, particularly what is the, what does the text of this same guideline here mean when they say controlled substance offense, we look to the Controlled Substances Act. And it supported that conclusion well, referencing... But the guideline says federal or state law. I mean the guideline says federal or state law, it says controlled substance, it doesn't make any specific cross-reference to the Controlled Substances Act. We know that in other parts of the guidelines, if the Commission wanted to provide a federal provision, it does it by name. It didn't do it here. Why does that not all just point to looking at the state law for what a controlled substance is? Well, I think the reasoning and the analysis in Jackson is quite useful to this question. One of the things that they look at specifically is the directive from Congress in Section 994, which specifically references the career offender guideline. And it addresses that the career offender status results from two or more prior felonies, each of which is described in Section 401 of the Controlled Substances Act. So we have that directive from Congress explicitly referencing that the career offender guideline, which is the same guideline language at issue here, is tethered to that. So as a directive like that, we don't need the guidelines to tell us where we should look. These are interesting arguments that really weren't fleshed out at the district court, were they? That's correct. Isn't that, I mean that kind of argues for this court not getting into the weeds when it hasn't been, it never was properly argued. Could it be argued that it's because it's undecided, and why would this court reach out to try and work out a circuit split? I mean, it's probably not the case for that, is it, counsel? Well, I think Mr. Jones presented the argument well, and he presented it at three different points in the district court. But, Judge Cook, you're correct, the government did not really respond. Instead, the government kind of encouraged the district court that it need not resolve any guideline disputes. And so we don't really have the record necessary. I do think, though, to Judge Nalbandian's point, that there's a first issue of statutory construction and principles of statutory interpretation that this court can address. We need not get into the weeds of chemistry in order to do that. And that is the argument that Mr. Jones... Is your argument that we need to apply the law from the career offender offenses to here, even though it's not directly applicable? The guideline that was directly applicable turns to the definition in 4B1.2. I'm colloquially calling that the career offender guideline. That is where the definition of controlled substance offense references to for the guideline that applied to Mr. Jones. Okay. I know you're out of time, but I do want you to talk about the other enhancements as to... I want to call it reckless endangerment, but it's actually recklessness... During flight. During flight. I know it's much longer. It's much longer on it's more particular. And I think there's an issue there. So do you want to talk about that just for a couple minutes? Yes. Thank you for the opportunity to do that. I think the question before the court at this point is solely one of law. And it's are the facts that are in the Rule 11 plea agreement and the revised pre-sentence report, are those facts sufficient to show that Mr. Jones... Recklessly created a substantial risk of death or serious bodily injury during the course of his flight. And reading the facts of the plea agreement and the PSR, it is a very brief period that he is in flight. And this court's case law requires that the government tether a specific aspect of the flight to a specific risk. When does the flight occur? I mean, he was shooting his gun when the police arrived. And then I think he brandished the weapon when they arrived. And then he took off and barricaded himself in the house. I mean, is that right? There's no factual basis that he brandished the weapon when the police arrived. The police contend that they witnessed him fire one shot into the air. But then when he saw police, he ran into the home without brandishing the weapon, pointing the weapon or firing the weapon at anyone. Okay, so was his firing of the weapon part of his flight, too, or not? I mean, I'm a little concerned of what facts we consider, I guess, in the course of fleeing the police, the law enforcement. I guess the enhancement refers to creating the risk of death or serious bodily injury in the course of fleeing. That's right. And so he did not flee until he saw police. At that point, there's no indication, no allegation that he raised the firearm, that he pointed it at anyone. So the way you interpret the facts, he didn't really do anything other than run into the house and barricade himself. Exactly. And that's not just the way I interpret the facts. That's the facts in the Rule 11 that the parties agreed to at the time. Well, just the act of barricading himself in the house, doesn't that create a risk of serious injury and bodily injury of just the barricading? I think the term barricading came from the officer who declared that he had barricaded himself. He did refuse to come out. I don't know that that is equivalent to barricading oneself in a home. But he had fired, they saw him fire the gun, didn't they? Prior to fleeing, yes. But I mean, he fires the gun, he doesn't throw it away, or nobody says he throws it away. He takes the gun that he's just fired and goes back in the house and refuses to come back out. But he's got the gun in the house, he's hunkered down there. That's correct. I think it's more analogous to the court's cases where armed flight, which is exactly what we have here, is not sufficient to show that he recklessly created a risk of serious bodily injury or death. Okay, you have a case from the Ninth Circuit? There is a case from the Ninth Circuit that we cited in the district court, yes. It says that you need more than just barricading. Does that have a weapon there, too, or not? That was a firearm case. I think the point of that case was that the risk is not one that is a result of police action. And so what we have in this case is the officers determine that it's a barricaded gunman situation, and they make that declaration. So the analogy in the district court on this case was we have the officers making this declaration. It's not something that the defendant himself did that created a specific risk that is attached to a specific aspect of his flight. Okay, so is that the best authority, the Ninth Circuit? Do you have some other authority you want us to look at? I think this court's authority in Brooks and Mewks are also very good authority because what we have here is a government really not relying on anything else other than this one- to two-sentence description that the parties agreed upon, and that under Mewks and Brooks is not enough under this Mewks, Brooks, and this court's line of cases saying that a specific aspect of the flight must be linked to a specific risk. We just don't have that here. All right, you'll have your rebuttal. Thank you. Three minutes rebuttal. Good morning. Good morning. May it please the court, Mark Chastain for the United States. Before we get too far into the argument, I'd just like to note that there is a motion pending before this court to take judicial notice of Mr. Jones' prior conviction document. The court has not yet ruled on that, and I'd ask the court to grant that motion.  How would it help us, counsel? It would certainly narrow the facts of the questions before this court as far as what controlled substances need to be considered if we move beyond the question of whether a match is needed. Why wasn't that stuff filed in the district court? At the time, I guess that gets to the next point that I'd like to make, Judge Nalbandi, and I think that is that what we've heard today sort of significantly overstates the record in this case in terms of what was presented to the district court. All that Mr. Jones did was cite the Lofton case, an unpublished decision by Judge Tarnow that had to do with cocaine. Mr. Jones did not present any expert testimony or any evidence or report. Wait a minute. Who had the burden? The government did, and I think the government… He didn't present any expert. That's correct, and the government instead cited an unpublished case, but that also incorporates a published case, the Thomas case from this court saying… He didn't cite anything on point. I guess I'm wondering, I mean, this question about whether it's a state law or federal law, you know, controlled substance definition, all right, let's assume we can reach that. It's a legal issue. It came up in the court below. If we were to agree with them that we have to look at the federal definition only, at that point we don't have any evidence, right, and you had the burden on that issue. So we would be…basically they would prevail on that issue, wouldn't they? No, not if the court grants the judicial notice as it's done in many other cases. Most recently in the Butts case, which is a published decision from just last year in which the court did accept. But let's say we grant the judicial notice and it's which narrows it to heroin. Is that what it does? That's correct. Okay. So we narrow it to the heroin. Is there no argument? I thought that was the argument, that the heroin definition was the one that was broader. I mean, I know there's a cocaine argument too, but I thought there is an argument that the isomers or whatever don't match on heroin. Is that right? They certainly make that argument. Okay, but we don't have any. It would be very difficult for us to evaluate the guts of the science of that argument on this record, I take it. I think that the court, any court can always look at the decisions of another court and the reasons for that court. And that's why we cited the Bell case in our brief. Judge Beckering in the Western District of Michigan undertook an exhaustive review of the experts in this and came to the legal conclusion that the Michigan statute is not broader than the federal statute as to heroin. And Judge Jarbo also reviewed that same evidence, that same testament, those same expert opinions by Drs. Denmark and Dr. Dudley and came to that same legal conclusion. And so that's why we cited those in our brief, is that this court can then also look to those courts and the reasons they arrived at that conclusion and make its own determination that on the three... Is it a legal conclusion? I mean, I guess it's ultimately a legal conclusion, but aren't there just factual questions about the science? I think that the science informs the technical words in the statute. And on the three isomers, and this appeal is limited to those three isomers that they raised, actually for the first time in their brief on appeal, the pseudo-heroin, beta-isoheroin, and gamma-isoheroin, the courts in the Western District of Michigan have concluded that as a matter of law, those are covered by federal law as well as Michigan law. So on that narrow issue, this court can look to those decisions by other courts which were informed by technical expertise in defining these terms to determine that there is no overbreadth problem. So... So the argument is that it's district court precedent that was informed by experts. Correct. Right? That's the argument. Correct. So now that is the law to the extent there is some, it's district court. To the extent the law has been developed in the circuit on this issue, it's been in district court cases. And it is pending in other district court cases, and that's one reason why we would urge this court to reach the issue if it feels it's appropriate, because it does have a wide impact potentially on not just career offender recidivist sentencing, but armed career criminal and enhanced sentences under the Controlled Substance Act. Well, let me ask, armed career criminal doesn't have the state or federal law phrase, does it? It, in fact, specifically refers to federal law. The definition of a... Right. So the argument for using state law I think is stronger in this context than it is for the armed career criminal act context. Is that right? Well, both rely on prior convictions under state law, but I think under armed career criminal and enhanced sentencing under the Controlled Substance Act, there's no dispute that the substance would have to be regulated under federal law. It's where we get to the guidelines issue where there is not a match required. Right. So, I mean, that's what I'm saying is I think anything that we say here on that legal issue doesn't necessarily inform the armed career criminal act. It would depend on the court's ruling, certainly. But your position, I take it, is we don't need to get into the science or any of that. It's just a simple question of statutory construction, and we can look to the state law on what a controlled substance is just like, you know, some of the other circuits. I think the majority of the other circuits have done, right? Absolutely. And that we should just kind of, I don't know, come out that way. We wouldn't need to deal with whether it's broader or not broader, and that would take care of it, I assume, in your mind. That would definitely take care of it because the match issue, whether the federal and state statutes align would not be an issue under 4B1.2b if this court were to find, as the majority of circuits have found, that it is not tied to the federal definition. I mean, isn't it odd, though, that we would, I mean, we're basically applying a federal guideline. This looks federal. Why wouldn't we naturally look at the Controlled Substances Act to see what a controlled substance is? I mean, why would the commission leave it to everybody, every state, to define heroin or cocaine or whatever it is? Because I think the plain, as Judge Nelvanian, you pointed out earlier, it does not have that language, and so we should not incorporate into the guideline language that's not there, and that's what some of the other circuits have pointed out as well. In fact, as we point out in our brief, originally the guideline as promulgated did refer to the Federal Controlled Substance Act, and that was ultimately taken out by the commission in 1989. So, in effect, what Mr. Jones is asking this court to do is to put a reference back into the guideline that the Sentencing Commission took out. This issue, by the way, I don't remember. Is this one of the issues that the commission was just recently purporting to deal with and did not deal with? In January, they did ask for comment on that. They had proposed guideline amendments that went both ways. They asked for comment on one that said specifically it does include and another one that said it does not include state law and another one that says it's only federal law. They promulgated that in January, and the latest proposed amendments that came out earlier this month, they did not include those proposed amendments. But instead, I will note that they did include a proposed amendment this April to the guideline to specifically reference some maritime drug offenses under Title 46. So, again, clearly the commission knows if it wants the guideline to specifically incorporate and be limited by federal law, it knows how to do that. It's, in fact, proposing to do that in another context with this batch of amendments. Yeah, but I mean I don't know which way any of it cuts. They know there's a circuit split. The Supreme Court has said it, or two justices have said it. The commission knows that they have basically promulgated a guideline that would do either one of the two, and then they didn't decide, right? In the meantime, the courts need to decide the issue, but it could change, obviously, if the commission decides to adopt one of the other guidelines amendments, which is why we think it is important for the court to consider the underlying substantive issue as litigation percolates throughout the district courts, certainly in Michigan, and provide some guidance because, like I said, the amendments could change this and make this a necessary question very soon. I'd like to just address a few points that Ms. Bashi made in her argument. She said that Judge Drain tethered his determination of the reasonableness of the 10-year sentence to the guidelines, and that's really an overstatement of the record. In fact, Judge Drain, when taking the plea agreement, was told that the guidelines, as calculated by the parties at that point, were less than half of the 10-year sentence that the parties had agreed to, and told Mr. Jones that he intended to go forward with the 10-year sentence. Well, this kind of goes to the question of, I guess, harmless error, right? I guess my hang-up on this, or concern on this issue, is he made a specific statement about, go up to the Sixth Circuit, and if it changes, come back, right? I mean, it was something like that. Why would he say that if in his mind it wouldn't, even though it's a C1C agreement, even though everybody knows that it's 10 years, why would he say that if it wasn't going to matter in his mind at least a little bit? I think that that statement needs to be taken in context with everything that came before, where he repeatedly said the guidelines didn't matter, and found that this was reasonable regardless of the guidelines. The factors that he cites in finding that this sentence was reasonable were not tethered to the guidelines. It was the 3553A factors. And then after that statement, which is a little unclear and puzzling, he says to Mr. Jones, you've waived your right to appeal. Judge Strang clearly thought that this was not going to come up on appeal. It turns out the appeal waiver does not preclude this appeal. But I think it's fair from all of his statements to assume he didn't contemplate that this was actually going to come to the court in this case. So he was just saying, go ahead, try to go to the court of appeals, come back if it changes, thinking to himself, but I know that you waived your right to appeal, so I'm not saying anything because you're not coming back. I think the judges are very aware that this is, as I've said, this is percolating in very different cases. So it could be well being that he went to Mr. Martin. If it's some other case, you get a different ruling, I'll reconsider this guidance issue. I mean, hasn't the court said, I mean, regardless of what the judge here said, you have to calculate the guidelines before you, even on a C1C agreement, they have to be calculated correctly, right? I mean, otherwise it doesn't make sense. So, I mean, why would it be hard? I guess I'm not, I don't know, I find this case a little bit odd because I guess, do you agree or do you have a view on whether the defendant could, if we were to reverse, could the defendant get out of the plea? I mean, would the defendant have to move to withdraw the plea? I mean, he's not entitled to a re-sentence, is he? I mean, I assume your position is he's still bound by the contract or the original agreement that's ten years, regardless of what the guideline range ends up being? Well, the plea agreement specifically provides that if the sentence is vacated, if the judgment of the district court is vacated, or if Mr. Jones argues for anything less than a ten-year sentence, that the government can withdraw from the plea agreement. So we will have to wait and see what the result is. So if we were to vacate the sentence because we thought that the guideline range was inaccurate or improperly calculated, that would vitiate the plea agreement? Potentially. And if Mr. Jones, and that's the odd thing about this, is he's essentially trying to have it both ways, right? Even today, it's still not said on the contract directly by the court if he intends to withdraw from the plea agreement. He's never done that. Instead, he wants the district court to essentially do for him what he cannot ask the court to do directly, and that is give him less than a ten-year sentence. And so, depending on how the court rules on this case, if it says that he cannot get or if he can withdraw from his plea agreement or leads to him asking for less than a ten-year sentence, that the government absolutely can withdraw and reinstate the felon in possession charge with a potential 15-year mandatory minimum sentence. Right. There's that. There is. All right. Counsel, can you briefly address the enhancement as to the recklessness of creating substantial risk of bodily harm in the course of fleeing from police officers? So I see the enhancement as applying when the fleeing begins. I think the fleeing begins after he fired the shot. I mean, what did he do after he started to flee to create the substantial risk of bodily harm? So the facts that the district court and it's clear that the parties agree that really the only question is, do the facts that were presented to the district court, are they sufficient to apply this guidelines enhancement? The facts are that the police were called, they arrived at the scene, they saw Mr. Jones with a gun firing, and then he ran into the house, as Judge Nalbany I think pointed out earlier, or it might have been you, Judge Griffin, that he must have had the gun with him as he went into the house. Okay. So is the recklessness in creating the substantial risk of bodily harm the fact that he still has the gun? Yes, and that's supported by both. So anybody that flees with a gun is subject to this enhancement? What rule are we going to make in here, this case, if we affirm this enhancement? That's what I want to know. I don't think the court needs to make a new rule. It needs to just apply what the court's already said in Mewkes and Brooks, which is where if the police see an offender fleeing with a gun, which it's fair to make that inference in this case, given that the police saw him shoot the gun, that that creates a risk that they will fire, open fire, and potentially injure bystanders or other officers. And both Brooks and Mewkes make that point. In their reply brief, Mr. Jones says that there's no evidence of bystanders and points to Mewkes. So is it anybody with a gun that flees is subject to this enhancement? Or anybody who has fired a gun before the police arrive and then flees with a gun? I mean, is that what it is? I think the rule is if the police see a person fleeing with a gun. The enhancement talks about in the course of fleeing. Right. So, I mean, it's not in the course of what applies until he starts fleeing. Right. He hasn't fled at that point, right? But he had the gun. As they arrived, they saw him shoot. So they know he has a gun. Unlike some of the other cases that they relied on, the police actually see him with a gun and then see him flee. And so at that point, it's really just a straightforward application of these other cases in which that was not the case. Okay. So it's not that he doesn't have to have the barricade in the house, too? Or is that? I think that that all plays into, I mean, we're trying to state a broad rule, but the question is do all the facts that were presented to the court in this case justify application of the enhancement? And the fact that he had fired a gun in the presence of the police, was running from them with the gun, certainly points to what this court has approved or talked about in Muke's and the Brooks' case is a theory of reckless endangerment that this court has adopted, that the police could open fire in that instance and cause a substantial risk of injury. All right. Thank you very much. Any further questions? Thank you. All right. Rebuttal in three minutes. Thank you. I'd like to briefly address the issue of judicial notice that the government began with. Importantly, the government's motion for judicial notice here only asked for the court to take notice of the Shepard documents regarding Mr. Jones' prior conviction in state court. The expert testimonies, the records from other district court cases are indeed factual analyses that are happening that are not properly before this court. They weren't presented in the district court. Mr. Jones didn't have an opportunity to respond to any of that. And I think we need not look far to understand why that is not an appropriate basis for this court to rule on the factual question of what heroin isomers are and are not included in Michigan and federal drug schedules. The government cites to... I mean, is that a fact question or a legal question? I think it's one, first, of statutory interpretation. But... Yes. But where the government has introduced kind of warring expert testimonies, expert declarations, it becomes a factual question. What is a... You can have experts on the law, right? We don't usually do that, but, I mean, it's possible. It may be possible. I mean, what's the fact... What is the fact... Is this a question of organic chemistry, whether this is the same thing as this, or whether you are evaluating, given what these two things are, whether they are effectively the same? I mean, is that the question? I think that Mr. Jones argues, and we would argue here, that the court need only look to what Congress wrote. And Congress knew the difference between optical, geometric, and positional isomers. It used the terms in different sections of the drug schedules. And we don't need to look further to know that Michigan law is broader than federal law. However, the government has asserted for the first time on appeal, never in the district court on this case, that isomers, as used in the federal drug schedules, are the same as derivatives. And I think that's where the factual question comes in. None of that was presented in the district court. It's not properly before this court. And so our position is we would need a remand in order to address that question. I wanted to also address the guidelines, that they matter. I understand I'm out of time in about 20 seconds, but these guidelines follow people. So Mr. Jones does need a correct calculation of the guidelines in the district court, even if he ends up with the same 120-month sentence. And I don't think this court has to answer the question about what will happen with the plea. That's for the district court to decide once the guidelines have been properly calculated. And those guidelines will follow him for the rest of his sentence. Okay. Any further questions? Judge Cook, Judge Novandy, thank you very much.  Case will be submitted.